## DIMAS v. ORTIZ.

APPEAL from the District Court of San Juan.

No. 43.—Decided May 5, 1905.

DIVORCE—CRUEL TREATMENT AND GRAVE INJURIES.—The phrase "a common woman" addressed by a husband to his wife is not within the term "cruel treatment and grave injuries" which by section 164 of the Civil Code is given as a ground for divorce.

ID.—The mere fact that a husband prohibited his wife to visit her mother or violently grabbed a pocketbook or portemonnaie from the hands of his wife does not constitute that cruel treatment to which reference is made by the law as a ground for divorce.

ID.—Where the evidence in an action for divorce shows that both spouses on a previous occasion had conspired to deceive the court and file an action for divorce based upon false grounds, the court is justified in giving slight credence to the testimony with respect to the grounds alleged in the subsequent action, and will be warranted in considering that such grounds are also false.

ID.—ABANDONMENT—VOLUNTARY SEPARATION OF BOTH SPOUSES.—Where the husband has consented and even procured a separation from his wife he cannot afterwards successfully allege abandonment as a ground for divorce.

QUERY.—Does not physical cruel treatment, as well as cruel treatment by words, constitute cruel treatment and grave injuries, as defined by the Civil Code as a ground for divorce?

The facts are stated in the opinion.

*Mr. Moraza*, for appellant.

*Mr. Martínez Quintero*, for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

On the 1st day of October, 1903, Ramón Dimas Hernández filed suit in the District Court of San Juan against María del Carmen Ortiz Rivera, for divorce, on the ground of desertion persisted in for more than one year. The parties were and are both residents of the city of San Juan, and were married on the 15th day of February, 1902. To this union a child was born on the 5th day of December, 1902. The complainant alleges that on the night of the 2d of June, 1902, the defendant then pregnant abandoned the conjugal home,

and that in spite of the endeavors and entreaties of the complainant she refuses to return to him.

The defendant in her answer denied the allegations of the complaint and by a cross-complaint asked that she be divorced from her husband on the ground of cruel treatment and grave insults (*tratamiento cruel é injurias graves*). The District Court of San Juan denied the application of the husband and granted that of the wife, leaving the custody of the child under the parental authority of the mother. From the judgment of the said court the complainant appeals.

In its fourth and fifth *considerandos* the court below says as follows:

"4. Concluding: That in order that cruel treatment or grave insults (injurias graves) may exist, as defined by the code, as a ground on which a divorce may be granted, and the dissolution of civil matrimony be declared, as provided in section 164, paragraph 3, of the Civil Code, it is not necessary to prove that one of the spouses has gone so far as to strike or assault the other, or use indecent language such as is used habitually by indecent persons of low life, it being sufficient for the conduct of one toward the other to be violent, hateful, or disagreeable to such an extent as to render conjugal relations unbearable, with injury to physical health, mental or moral, of the other spouse; whose feelings have been constantly disregarded and abused, and for whom life has been converted into continuous suffering.

"5. Concluding: That in the sense lastly expressed the evidence presented and considered according to the preponderance of the same is sufficient to show that the complainant is guilty of cruel treatment and grave insults to his wife, considering the contemptible words in regard to the conjugal relations, forbidding his wife to visit her mother during the time of her pregnancy, the fact of forcibly taking the pocketbook from her in a public place, the evidence being corroborated as it is by the defendant and one witness; the attitude of the husband in being disposed, as he was, to prosecute her for the theft supposed to have been committed by her, from which purpose he had to be dissuaded by another witness; his selfishness, low cunning and avarice manifested in the letters attached to this record, and to which one of the *resultandos* of this judgment refers, and his neglect and indiffer-

ence of his wife during her pregnancy and during the time of lactation of the child, even leaving out the allegations made by the defendant on account of the same not being corroborated by the testimony of the witnesses, in regard to the physical violence of which she was the victim at the hands of her husband.''

Section 164 of the Civil Code (English text) gives as the fourth cause of divorce, ''cruel treatment or grave injury,'' and for this and other reasons the court does not deem it necessary in this case to endorse the principles set out in the fourth *considerando*. Assuming, however, that language to be a correct statement of the law existing in Porto Rico, we are nevertheless of the opinion that the facts did not justify the court below in granting the divorce. There is no proof of the appellant having used insulting words to his wife beyond her own declaration. It would be a wide extension of the meaning of the phrases ''cruel treatment'' or ''grave insults'' to make them cover words like ''good for nothing'' (*una mujer cualquiera*), the only ones to which she testified.

It is true as shown by the proof that on or before the night of June 2, 1902, Dimas forbade his wife to visit her mother. This date was, however, six months before the birth of the child, and there is no proof that the appellee desired to visit her mother on account of being then pregnant. It would have to be presumed that the husband was aware of such motive on the part of his wife, and that he forbade her to go out of sheer arbitrary cruelty of which there is no indication beyond the mere act of forbidding. Always excepting the statements of the appellee, the only positive evidence of Dimas forbidding his wife to go is the statement of his mother, and the latter also declares that his reason for it was insults received by him from the mother of his wife.

The charges of cruelty alleged to have taken place before the night of June 2d are not what the law defines as cruelty,

and as has been seen these charges are mainly made up of declarations emanating from the appellee. On the night of June 2d, as stated by one of the witnesses, Dimas was seen to snatch something from the hands of his wife in the Plazuela of San Francisco, and he was heard to say: "Now you may go your way (*Ya puedes marcharte*). So far as this is a charge of physical violence it is contradicted by the appellee's confession in which she says that fearing to be newly assaulted (*nuevamente atropellada*), whether by act, insult, or threat does not appear, she gave up the ten dollars which her husband claimed. The court cannot see its way clear to call this alleged snatching of the pocketbook or the money, the cruelty defined by the statute. It is too vague and unexplained and out of relation with what went before or after.

The qualities displayed by the appellant in his letters may be, as the court remarks, evidence of his selfishness, low cunning and avarice, but they are nothing more.

After June the 2d, 1902, there is some proof of neglect, of indifference, of stinginess, and of continued pettiness, but there is no proof of cruelty, taking the extensive meaning of that word given by the court below. On the other hand, there is even some proof to show that he made desultory efforts to placate his wife and child.

Taking as true all the charges of the appellee, there is no case of cruelty. However, a great part of the evidence considered by the court below is made up of declarations emanating from the appellee. Her confession is only entitled to weight for the admission it contains, and what she declared to others in her own interest is of little or no probative force, and in these points she is directly contradicted by her husband.

There is besides another reason for giving little credence to her evidence, and that is that on June 5, 1908, three days after the alleged forcible ejectment from the house of her

husband she and her husband colluded to deceive the court by filing a fictitious petition for divorce. The application at that time was made on the ground of cruelty in endeavoring to make her change her religion, and it is not a violent presumption to infer that if any other valid grounds of divorce had existed at that time, the prior suit would have been brought on such grounds. It would seem that her application for a divorce on the ground of cruelty was an afterthought induced by her husband's previous action in filing his suit.

We find no error in the action of the court below in dismissing the complainant's application. It is true that his wife left his house on the night of June 2, 1902, but the whole proof militates against the theory that she left there without his consent. There is no reason to doubt the statement of the witness of what took place in the Plazuela de San Francisco. This proof taken in connection with his failure to make any direct effort to communicate with his wife, his going to Spain without communicating with her, show that he had no particular objection to her living apart from him. It is clear from his own confession that he first colluded with his wife to obtain a divorce on false grounds, and then for some unexplained reason changed his mind.

It is a necessary conclusion, however, that he must have wanted her to live apart from him, and this is corroborated by the witness, Americo de J. Geigel, who had been the lawyer of the appellee, and who testified that he attempted to bring the two spouses together without result, because neither one nor the other wished to live their lives together. Even if the appellant did not tell her to leave him in direct words, the proof is strong to show that he connived or brought about her departure.

From a consideration of the whole record, the court is of the opinion that there has been no legal reason shown why these parties should not continue to live together as

husband and wife, and the judgment of the district court denying the application of the complainant should be affirmed, and the judgment granting the application of the defendant should be reversed.

*Held accordingly.*

Chief Justice Quiñones and Justices Hernández, Figueras and MacLeary concurred.